(87 Misc. Rep. 211)

### WALTERS et al. v. HILL et al.

(Supreme Court, Equity Term, Monroe County.   October 31, 1914.)

WATERS AND WATER COURSES (§ 154*)—DRAINAGE DITCH—CONSTRUCTION BY COMMON OWNER—EASEMENT.

   The common owner of the land subsequently conveyed to plaintiff and defendant, more than 50 years prior to the division of the property, constructed an open ditch to drain water from a spring on the westerly portion of the property, which remained open and successfully drained the same across the easterly portion to a highway culvert. This ditch was open and apparent, and had been continuously used to drain the waters of the spring until defendants acquired title to the easterly portion of the land, when they laid a tile drain in the ditch and covered the same, filling a portion of the ditch with cobblestones, which interfered with the drainage and caused water to back up on the land owned by plaintiffs. *Held*, that on the severance of the land the owner of the western portion on which the spring was located acquired an easement over the eastern portion for the maintenance of the drain, and the drainage of the waters from the spring, whether mentioned in the deed or not, and that defendants, having taken with notice, were bound to leave the ditch as it was, unless they substituted a tile drain of sufficient capacity to drain the water.

   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 167–173; Dec. Dig. § 154.*]

Suit by David Walters and others against Louise M. Hill and others for an injunction to restrain the destruction of a ditch. Decree for complainants.

Lynn Bros., of Rochester, for plaintiffs.

Havens & Havens, of Rochester (W. F. Strang, of Rochester, of counsel), for defendants.

CLARK, J.   Plaintiffs and defendants own adjoining farms in the town of Webster, Monroe county, N. Y.; plaintiffs' farm lying westerly of the farm owned by defendants. These two small farms were originally one farm, consisting of 45 acres of land. There is a spring near the westerly line of plaintiffs' farm, and more than 50 years ago the then owner of the entire farm constructed a ditch leading from that spring in an easterly and northeasterly direction across the entire farm to the highway, which is east of the entire tract. This ditch served the purpose of draining the westerly portion of the farm (now owned by plaintiffs); the water from the spring passing down through this ditch, across the lands now owned by defendants, to a culvert in the highway above mentioned. This ditch had existed in practically the same condition for more than 50 years before either of the parties to this action became interested in this tract of land.

On or about October 1, 1907, Martin Bros., of Webster, became the owners of this entire tract of 45 acres of land, they having purchased the property at referee's sale, and on November 27, 1907, they sold by land contract the western half of the farm to the plaintiffs, they retaining the title to the eastern half, which was subsequently sold to defendants. Plaintiffs on or about December 2, 1907, paid to Martin Bros. on their land contract $200, and took possession of the western portion

of the farm, and they have ever since been in possession thereof. Subsequently, and in the latter part of February, 1908, Martin Bros. sold the easterly half of the 45-acre farm to a man named Fullington, his deed being recorded May 11, 1908, and plaintiffs' deed, bearing date April 30, 1908, was recorded two days thereafter, and by various mesne conveyances the title of the eastern half of this property passed to the defendants on the 1st day of September, 1911.

The ditch above referred to, from the time of its construction, more than 50 years ago, down to December, 1913, had always been an open ditch, and it served the purpose of draining from the westerly half of the farm the waters from the spring above referred to. In December, 1913, defendants without the consent of plaintiffs, and over their objection, put in tile crossing their portion of this farm, and filled up the ditch, making a covered tile drain, instead of an open drain, which had existed for so many years.

In constructing this tile ditch defendants started at the culvert east of their farm with an 8-inch tile, and proceeded westerly on their land some 50-odd feet, and from that point on to a point near the plaintiffs' line they used a six-inch tile, filling in the ditch above the tile, so that all waters that came from plaintiffs' land at that point must necessarily pass through this 6-inch tile. Moreover, at the westerly end of this 6-inch tile put in by defendants, and at a point near plaintiffs' easterly line, defendants filled in the ditch between the westerly end of the 6-inch tile and plaintiffs' easterly line with cobblestones covered with earth, so that any water coming from the spring on plaintiffs' land, in order to get into the new tile ditch, would have to drain through this stone construction.

After these changes had been made by defendants, it was observed, and has been established here, that it resulted in a failure to drain plaintiffs' land as it had previously been drained for many years by the open ditch. In other words, the limited capacity of the tile drain, and perhaps to some extent the cobblestone construction at the westerly end of it, together obstructed the flow of the water from the spring, so it resulted in setting the water back on plaintiffs' land, and portions thereof which had for many years been generally dry, and upon which good crops had been raised, were rendered practically valueless, because the water would not flow out through this tile drain, but would be set back on plaintiffs' lands and remain there until it soaked away or was evaporated.

Plaintiffs' lands up near the spring in question were naturally low, but the open ditch referred to had served the purpose of adequately draining off this water, and there never had been any serious difficulty until defendants put in the tile drain above referred to, and the result has been that plaintiffs' land has not been drained as in former years, for the new tile drain does not carry off the water as rapidly as it has been carried by the open ditch for more than 50 years. This ditch was perfectly apparent at the time defendants purchased their lands, and could have been seen by the exercise of ordinary care, and under the circumstances defendants must be charged with knowledge that it existed across the entire easterly portion of the farm before they purchased it.

When plaintiffs purchased these lands of a common owner, this ditch was apparent and visible to everybody, and it had been used by former owners for draining the waters of this spring for many years, and it must be held that plaintiffs' grantors, even though the ditch was not mentioned in the deed, granted to plaintiffs by implication the right to have the ditch across the easterly half of the lands remain as it was, to the end that their lands might be drained as they had been in former years. The right to drainage across the easterly part of the farm passed as an appurtenance of the westerly portion, even though it was not specially mentioned in the deed, and it undoubtedly materially affected the value of the land, and plaintiffs had a right to expect that this easement imposed by the former owners of the property would be continued. Paine v. Chandler, 134 N. Y. 385, 32 N. E. 18, 19 L. R. A. 99; Trustees v. Lynch, 70 N. Y. 440, 26 Am. Rep. 615; Roberts v. Roberts, 7 Lans. 57; 40 Cyc. 650.

A careful reading of the numerous cases cited by counsel for defendants fails to change my conclusion that plaintiffs are right in their contention here, for each one of the cases cited is distinguishable as to the facts from the case at bar. When plaintiffs purchased these lands, even though the ditch was not mentioned in their contract or deed, it was there, open and notorious, and it had been observed for more than 50 years by the neighbors living in that vicinity, who knew that it was draining the waters from the spring above mentioned. This was a perfectly open and apparent burden placed upon the easterly half of the farm by a former common owner. Its draining of this spring had been without interruption, and the continuance of this ditch to drain off the waters of the spring was reasonably necessary for the proper enjoyment of the westerly half of the farm, and that being so an easement would be implied in favor of that portion of the farm, even though it was not specially mentioned in the deeds of people subsequently purchasing it. Wells v. Garbutt, 132 N. Y. 430, 30 N. E. 978.

Defendants have interposed a counterclaim, claiming that plaintiffs, by digging certain ditches, had turned water on lands of the defendants at other points, causing them certain damages; but it is sufficient to say that, upon all of the evidence with reference to the counterclaim, it has not been established. Plaintiffs have drained no water on defendants, except what would naturally flow upon their property, and the counterclaim must be disallowed.

Upon all the evidence in this case it impresses me that defendants were not justified in interfering with this open ditch, which had for so many years served the purpose of properly and sufficiently draining plaintiffs' lands, unless they substituted a covered ditch of sufficient capacity to drain plaintiffs' lands as well as they had been drained before. This the defendants did not do, for it is established that, since defendants made the changes heretofore referred to, portions of plaintiffs' lands have not been drained as formerly, crops that they had planted have been injured because of the water standing on their lands, and under the circumstances plaintiffs are entitled to the equitable relief demanded in the complaint, with costs to be taxed.

Findings may be submitted, and judgment is directed accordingly.